THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUDGE TORRES

13 CV 7224

-----------------------------------------X
)
)
)
MITCHELL KREVAT                          )   Civil Action No.
)
)   **COMPLAINT FOR**
Plaintiff, pro se                        )   **TRADEMARK INFRINGEMENT**
)
)
)   (JURY TRIAL DEMANDED)
v.                                       )
)
BURGERS TO GO INC. and SAMMY SULTAN      )
)
)
Defendant(s)                             )
)
)
-----------------------------------------X

Plaintiff, Mitchell Krevat ("Krevat"), brings this complaint against Burgers To Go, Inc. and Sammy Sultan ("Sultan") and alleges as follows:

## PARTIES

1.  Krevat is a United States Citizen residing in New York, NY.

2.  Upon information and belief, Burgers To Go, Inc. is a corporation incorporated under the laws of the State of New York, having a principal place of business in Cedarhurst, New York in the County of Nassau. Burgers To Go Inc., operates a kosher hamburger restaurant in New York under the name of BURGERS.

1

3.      Upon information and belief, Sultan is the owner and manager of Burgers To Go, Inc. Upon information and belief Sultan is a citizen of Israel. Burgers To Go, Inc. and Sultan are sometimes referred to as "The Defendants".

## JURISDICTION AND VENUE

4.      This is an action for trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. § 1125, and the laws of the State of New York.

5.      This court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331, 1338 and 1367.

6.      This court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 and New York common law. The matter in controversy exceeds the sum of $75,000 exclusive of interest and costs. Upon information and belief there is complete diversity between Krevat, Burgers To Go, Inc. and Sultan.

7.      This court has personal jurisdiction over Burgers To Go Inc. and Sultan as they have undertaken significant commercial activity in New York, regularly transact business in New York, maintain a place of business in New York, and the acts of Burgers To Go, Inc. and Sultan that constitute the following claims, including, without limitation, the sale, the offer for sale, and promotion of the infringing goods have been and continue to be committed and cause harm to Krevat in this commercial district. Accordingly, personal jurisdiction exists over Burgers To Go, Inc. and Sultan in this state pursuant to New York Civil Practice Law and rules §§ 301 and 302.

8.      Venue is proper in this court under 28 U.S.C. § 1391.

## FACTS

## THE KREVAT TRADEMARKS

9. Krevat Krevat created, used and continues to use five distinctive trademarks ("Krevat trademarks") in connection and promotion and sale of Burgers Bar products.

10. Krevat operated and ran a kosher food restaurant chain in New York and New Jersey between June 2006 and November 2011 under the name Burgers Bar.

11. Krevat's trademarks were filed in the United States (reg. no. 3,912,193 and 3,978,926 and 3,912,194 and 86,036,207 and 86,037,659).

12. Krevat began manufacturing and selling hamburgers and related food items, and providing the services (collectively "the goods" in New York under the trade name Burgers Bar in 2006. Sauces and salad dressings were sold under the names CHIPAYO MAYO and MUSTAENGO beginning January, 2007.

13. For the past seven years Krevat has invested heavily in branding, advertising, marketing and otherwise developing the reputation and goodwill of BURGERS BAR, CHIPAYO MAYO and MUSTAENGO brands for the goods.

14. Krevat's Burgers Bar restaurants were meticulously designed in a unique and special format to provide unique kosher food for customers made from high quality raw materials with strict adherence to a high standard of service. The CHIPAYO MAYO and MUSTAENGO sauces and salad dressings were uniquely formulated using only the finest ingredients to provide a one-of-a-kind taste experience.

15. Today, Krevat continues to manufacture, distribute and provide the Goods under the BURGERS BAR, MUSTAENGO and CHIPAYO MAYO brands.

16. Krevat continues to invest substantial resources in marketing and advertising the BURGERS BAR, MUSTAENGO and CHIPAYO MAYO brands.

`17. The BURGERS BAR brands are widely recognized in connection with the goods in the United State and the BURGERS BAR, CHIPAYO MAYO and MUSTAENGO products are sold in the United States.

18. Burgers To Go, Inc., and Sammy Sultan leased the former space of Burgers Bar to open a kosher hamburger restaurant. They made no revisions or alterations to the previous space with regards to decor, layout, menu, food preparation and delivery systems.

19. The new restaurant was and is named BURGERS.

20.. The Defendants frequently referred in print and online advertising to BURGERS as being 'Formerly Burgers Bar".

## BURGERS BAR PRODUCTS

21. Burgers Bar Brand products were first sold under the Krevat trademarks in the United States in 2007.

22. Since 2007 Krevat has continuously and exclusively invested a great deal of time, effort and money in promoting and advertising the goods sold under the Krevat trademarks and developing goodwill associated with the Krevat trademarks in the United States.

23. Based on this long use of the BURGERS BAR, CHIPAYO MAYO and MUSTAENGO marks, these names have become well-known in the local Jewish community as well as the broader Jewish communities throughout the United States, and have come to be associated with Kosher restaurants, and hamburgers and unique sauces in particular.

24. Since at least as early as 2007 Krevat has continuously and exclusively invested a great amount of time, effort and money in promoting and advertising the goods sold under the Krevat trademarks.

22. Krevat's goodwill in the Krevat trademarks have become an asset of substantial value.

25 As a result of Krevat's continuous and exclusive use of the Krevat trademarks with kosher hamburgers and unique sauces, the purchasing public has come to associate Krevat as the source and sponsor of BURGERS BAR, CHIPAYO MAYO and MUSTAENGO products sold under the Krevat trademarks.

## DEFENDANT'S INFRINGEMENT AND UNFAIR COMPETITION

26. During 2013, Krevat became aware of the unauthorized use of the Krevat trademarks in connection with the hamburger restaurant operated by the Defendants.

27. Despite the Plaintiff's ownership and well-known use of the Krevat trademarks, the Defendants never contacted Krevat to request and obtain his consent to the use of the trademarks.

28. The Defendants are in the business of offering for sale and selling hamburgers and sauces under the Krevat trademarks.

29. The Defendant's use of the trademarks is identical to Krevat's use of the trademarks and all four infringing marks are used in conjunction with the sale of hamburgers and sauces.

30. Krevat and the Defendants are engaged in the business of selling the same types of goods and services to the same class of customers, through the same channels of trade.

31. The Defendants knowingly use the trademarks and other indicia without authorization or license from Krevat.

32. The Defendants use of Krevat trademarks and other indicia is likely to cause confusion amongst consumers.

33 The Defendants' use of the term "Burgers, the place to meat", is confusingly similar to , and therefore infringes, Krevat's common law trademark rights and its Federal trademark registrations.

34. Krevat's use of the trademarks began prior to the acts of the Defendants complained of in this Complaint, and the Krevat trademarks are currently in such use.

35. The Defendant's use of the trademarks has been open and notorious, and commenced after the day of first use of the Krevat trademarks.

36. Krevat, Krevat's representatives, by phone calls and correspondence that took place between Krevat, Krevat's representatives and SULTAN, demanded that the defendants cease unauthorized use of the trademarks in connection with the restaurant. The Defendants refused.

37. The Defendants continue their unauthorized use of the trademarks.

## FIRST CLAIM FOR RELIEF
## LANHAM ACT VIOLATION-UNFAIR COMPETITION

38 Krevat repeats and realleges each of the allegations contained in paragraphs 1 through 37 as if fully set forth herein.

39. The Defendants use of the Krevat trademarks constitutes a false designation of origin, description or representation, which is likely to cause confusion, mistake or to deceive as

6

to origin, affiliation, connection, sponsorship or association of the Defendants with Krevat or as to origin, sponsorship or association of the Defendants use of Krevat's trademarks, in violation of §43(a) of the Lanham Act and 15 U.S.C. §1125(a).

40. Upon information and belief, the defendants have acted knowingly, willfully and maliciously, with the intent to injure Krevat by engaging in the described herein.

41. The Defendants' actions demonstrate a willful and conscious disregard of Krevat's rights, thereby justifying an award of punitive damages in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF
## LANHAM ACT VIOLATION-UNFAIR COMPETITION

42. Krevat repeats and realleges each of the allegations contained in paragraphs 1 through 41 as if fully set forth herein.

43. Through their acts alleged herein, the Defendants have infringed, and continue to infringe Krevat's trademarks in violation of §43(a) of the Lanham Act and 15 U.S.C. §1125(a).

44. The Defendant's infringing activities have caused and are likely to continue to cause confusion, mistake and deception among the consuming public and trade as to whether the Defendant's products and services bearing Krevat's trademarks, originate from, or are affiliated with, sponsored by, or endorsed by Krevat.

45. The Defendants' infringing activities are without Krevat's consent and have caused and are likely to continue to cause severe damage to Krevat.

46. Upon information and belief, the Defendants have been and/or are using Krevat's trademarks with full knowledge of and/or willful disregard for Krevat's exclusive rights in the Krevat trademarks.

7

47.     Upon information and belief the Defendant's conduct is intentionally willful, fraudulent and malicious and is undertaken with an attempt to reap the benefit's of Krevat's goodwill represented by the Krevat trademarks.

48.     The Defendants have irreparably damaged and will continue to irreparably damage Krevat. Krevat's injury is, in part, intangible in nature and therefore incapable of being fully measured or valued in terms of monetary damages. The full nature and extent of full monetary damages attributable to the Defendant's conduct will be presented at trial.

49.     The Defendant's actions demonstrate a willful and conscious disregard of Krevat's rights, thereby justifying an award of punitive damages in an amount to be proven at trial.

## THIRD CLAIM FOR RELIEF
## COMMON LAW UNFAIR COMPETITION

50.     Krevat repeats and realleges each of the allegations contained in paragraphs 1 through 49 as if fully set forth herein.

51.     The acts of the Defendants infringe Krevat's rights in the trademarks, and constitute trademark infringement in violation of the common law of the State of New York.

52.     The Defendants' use of the Krevat trademarks is likely to cause consumers, the public and the trade to purchase products and services from the Defendants believing that Krevat is the source of these goods and services, and/or that there is an association between the Defendants and Krevat, and/or the products offered by the Defendants were sponsored or authorized by Krevat.

8

53. The Defendant's misappropriated the Krevat trademarks, and took advantage and made use of Krevat's efforts and goodwill and otherwise unfairly competed with Krevat in violation of the common law of the State of New York.

54. The Defendants' actions have irreparably harmed Krevat's reputation and damaged Krevat's goodwill.

55. The Defendants' unlawful actions have interfered and/or will certainly interfere with Krevat's sales, have or will unfairly divert sales to the Defendants. and have caused. or will certainly cause Krevat monetary damage.

56. Upon information and belief the Defendants acted willfully, knowingly, and maliciously to injure Krevat by infringing and misappropriating the Krevat trademarks in the conduct herein described.

## FOURTH CLAIM FOR RELIEF
## COMMON LAW TRADEMARK INFRINGEMENT

57. Krevat repeats and realleges each of the allegations contained in paragraphs 1 through 56 as if fully set forth herein.

58. Through the acts described herein, the Defendants have used an unauthorized reproduction, counterfeit copy, or colorable imitation of Krevat's Trademarks in connection with the sale, distribution and advertising of its hamburgers, sauces and restaurant services and such use is likely to cause confusion, mistake and deception among the consuming public in violation of New York State common law.

59. The Defendants have infringed on Krevat's Trademarks and continue to do so by manufacturing, marketing and selling hamburgers and sauces, and providing restaurant services in conjunction with Krevat's Trademarks.

60. Krevat has been damaged by the Defendant's willful infringement.

61. Krevat is entitled to an award of its reasonable attorney's fees and costs as a result of the Defendant's willful infringement.

## PRAYER FOR RELIEF

WHEREFORE, Krevat demands judgement against the Defendants as follows:

A. That the Defendants' have infringed on Krevat's U.S.trademarks reg. nos. 3,978,926 and 3,912,193, 3,912,194 and 86,036,207 and 86,037,659 and competed unfairly as set forth in this Complaint, in violation of Krevat's rights under the Lanham Act, 15 U.S.C., §§ 1125(a) and 1125(c);

B. That the Defendants' conduct constitutes willful trademark infringement and unfair competition under the statutory and common law of the State of New York;

C. That the Defendant's and their agents, officers, directors, servants, employees, successors and assigns, and all other parties in active concert or participation with the Defendants be preliminarily and permanently enjoined from directly or indirectly;

  i. Using the Krevat trademarks, or any other logo, design, artwork, or trademark that are similar to or are colorable imitations of the Krevat trademarks as used in commerce and as claimed in the Krevat registrations.

  ii. Holding themselves as or otherwise representing themselves to be owners of, or otherwise authorized to use the Krevat trademarks.

  iii. Performing any actions or using any words, names, styles, titles, or marks which are likely to cause confusion, to cause mistake, or to deceive, or to otherwise mislead the trade or public into believing that the Krevat trademarks and the Defendants are related or connected, or that the Defendants are a sponsor of

10

        Krevat or that the Defendants and Krevat are in any manner affiliated or associated, or under the supervision or control of each other, or that Krevat's goods or services originate from the Defendants, or are otherwise manufactured, offered for sale or sold with the approval, consent. authorization, or under the supervision of the Defendants, to engage in any other activity that may lead the trade or public to associate the Defendants with Krevat;

    iv.    Using any words, names, styles, titles, or marks, either individually or otherwise, that create a likelihood of injury to the business reputation of Krevat; and

    v.    Engaging in any other practices that will tend to unfairly compete with or injure Krevat's business and the goodwill appurtenant thereto;

D.    That the Defendant's be required to deliver for destruction, all products, brochures, signs, packaging, labels, promotional materials, menus, advertisements, prints, catalogues and other written, printed, or electronic materials that bear the infringing Krevat trademarks.

E.    That Krevat recover the Defendant's profits and the damages arising from the Defendant's acts of trademark infringement and unfair competition pursuant to 15 U.S.C. § 11179a);

F.    That the court award treble damages pursuant to 15 U.S.C. § 1117(a); and

G.    That Krevat recover pre-judgement and post-judgement interest on each and every award;

H.    That Krevat recover his reasonable attorney fees incurred in this action pursuant to 15 U.S.C. § 1117(a); and

I.    That Krevat have such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Krevat respectfully requests a trial by jury as to all issues so triable.

Dated: New York, New York
      October 10, 2013

Respectfully Submitted,

By: /s/

Mitchell Krevat, pro se
200 East 94th Street
New York, NY 10128
(917) 691-1911

12