UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MITCHELL KREVAT,

                              Plaintiff,

           v.

BURGERS TO GO INC. AND
SAMMY SULTAN,

                              Defendant.

Case No. CV 13-6258 (JS) (AKT)

## DECLARATION OF MITCHELL KREVAT IN SUPPORT OF HIS REQUEST FOR AN AWARD OF DAMAGES AND ATTORNEYS' FEE

Mitchell Krevat hereby declares as follows:

1. I am plaintiff in the above-identified action. I make this declaration in response to the Order of Judge Joanna Seybert of the United States District Court for the Eastern District of New York (Islip Division) in *Krevat v. Burgers to Go, Inc. and Samuel Sultan*, Civil Action No. 13-cv-06258 (JS) (AKT), dated September 16, 2014, in which the Court allowed plaintiff thirty (30) days to submit evidence and a calculation of damages. I am submitting this Declaration as my request to be awarded a reasonable royalty, treble damages, attorneys' fees and costs against the corporate defendant and the individual defendant, for inducing infringement, and pursuant to the doctrine of joint and several liability for joint tortfeasors. All statements contained herein are based upon personal knowledge, except where stated to be on information and belief.

2. I was the sole owner of Burgers Bar Restaurant in Cedarhurst from 2006 until 2011, when I closed the restaurant due to an illness. I am fully familiar with the costs, expenses, and franchise fees involved in running a fast food restaurant franchise such as the one involved in this action for trademark infringement and unfair competition.

3. When I opened this restaurant, I entered into a franchise agreement with a Burgers Bar restaurant in Brooklyn, New York, which granted me the right to run a restaurant by the same name, using the same menu and operation procedures. I paid the Brooklyn parent entity an upfront franchise fee of $50,000.00 for the right to open the restaurant. I was also required to pay a monthly fee of five (5%) percent of gross sales, including food and beverages, and a fee of seven (7%) percent on the cost of goods that the franchisor sold to me and which I was required to buy from him, including hamburger meat, rib steaks, chicken breasts, breaded chicken cutlets, breaded chicken fingers, soups, prepared salads (cabbage and corn), salad dressings, and sauces. I am basing my damages computation on this franchise structure.

4. To prepare my damages submission, I relied upon the following documents relating to the trademark infringement underlying this case:
   a. the Complaint and Answer by the individual defendant, Mr. Samuel Sultan;
   b. the trademark registration certificates that I own for the Burgers Bar trademarks and service marks;
   c. the photographs that I took of the infringing signs found on defendants' premises;
   d. the infringing menus obtained in visits to defendants' restaurant;

2

  e. the use of the trademarks on the Internet on defendants' website, burgers5towns.com;

  f. the Report and Recommendation of Magistrate Judge A. Kathleen Tomlinson holding defendant Burgers to Go, Inc. liable in default for trademark infringement and unfair competition, and also holding the individual defendant Samuel Sultan individually liable as well as jointly and severally liable for trademark infringement and unfair competition, based upon his actions as owner and Chairman of the corporate defendant; and

  g. the Order of Judge Joanna Seybert dated September 16, 2014, which adopted in its entirety Judge Tomlinson's Report and Recommendations, and ordered that defendants be held jointly and severally liable for the torts of trademark infringement and unfair competition, pursuant to sections 35 and 43(a) of the Lanham Act.

  I am not attaching these documents because they are either already of record, or unnecessary because the court has already decided the issues of liability.

5. I have also reviewed the following financial documents produced by defendant during discovery in this action:

  a) the profit and loss statements for the years 2012 and 2013 of defendant Burgers to Go, Inc (see Exhibit A, attached hereto);

  b) the 2012 and 2013 tax returns filed by the corporate defendant;

  c) the quarterly New York sales tax returns for the years 2012 and 2013;

    d) the credit card statements produced by defendants, which are summarized in Exhibit B; and

    e) the best available copy of a check tendered by a customer in payment for a food purchase at the restaurant (Exhibit C).

I am not attaching the corporate or sales tax returns or the monthly credit card statements as they are voluminous, but can file them under seal if the Court requests. None of the documents produced by defendants was stamped confidential, but I am making this offer to protect defendants' privacy.

6.   In my review of the documents produced in this action, I find several serious deficiencies or irregularities in the information provided. First, there are either no or minimal cash sales reported on the profit and loss statements, the corporate tax returns, or the New York State sales tax returns. Those documents record only credit card sales for 2012, as if everything purchased in the restaurant during the first year of its existence was always charged by the purchaser. Only minimal cash purchases were recorded for 2013 (13.4% of total sales). I find this to be highly suspicious and false on its face. According to my own experience and based upon statistics collected by the New York Restaurant Association, a trade group, as well as other industry experts and reports, cash sales in restaurants amount to at least 30% of sales and as much as 80%. In the case of a "fast food" type of restaurant, of which Burgers, the name Burgers to Go operated under, was one, such an establishment will usually have even more in the way of cash sales than other more expensive, formal, waiter service restaurants, for three principal reasons: (1)

4

the relatively low cost of each patron's check; (2) impulse purchases by passersbys, who will (for example) buy a soda or other drink or small snack and pay cash for it; and (3) the relatively very young customer base of this type of establishment. Thus, in calculating a reasonable royalty to determine damages in this action, I am adding 35% for estimated cash sales to the reported credit card sales figures to arrive at an estimated figure for monthly and total gross sales.

7. Another problem I noticed with defendants' profit and loss statement involves their payroll. The profit and loss statements produced by defendants claim to have a payroll of only $10,000 for each of the two years reported. This also seems highly unlikely, or almost impossible for a fast food restaurant such as this that prepares food to order. Assuming that this kosher restaurant was open five and a half days a week (closed Friday, and reopened Saturday evening), and also closed on Jewish holidays, it seems impossible to have a payroll that is so small. Even if the proprietor was unlawfully paying his employees less than minimum wage, it would still be an insufficient amount of payroll to reflect the amount of labor it takes to run a fast food hamburger restaurant. A single worker, working 40 hours per week, would earn about $15,000.00 per year at the prevailing New York State minimum wage of $7.25 per hour. It is even more unlikely in a strictly kosher restaurant, where kosher supervision authorities require that a Sabbath observant person must always be on the premises when the restaurant is open. This person must be on the payroll of the restaurant owner.

8. It is more likely that defendants had four or five employees at any particular time, including a person to take orders and staff the register and others to prepare, cook, and serve the food. The restaurant prepared to order almost all of its food. Everything was cooked on a grill, barbecue or a fryer, all of which require close attention to avoid overcooking the food. When I was running the restaurant, I had at least four employees in addition to myself (acting as manager and cashier) helping to operate the restaurant. It appears irrefutable, and I therefore conclude that Mr. Sultan must have been paying many of his employees in cash "off the books," particularly since defendants do not report any 2012 and limited 2013 cash receipts. I also cannot estimate the payroll for Burgers to Go, since defendants have not produced any W-2 forms, employment applications, or I-9 forms an employer must obtain to document verification of citizenship or work eligibility for the U.S. Citizenship and Immigration Service. In their profit and loss statement, defendants have stated that they have paid only minimal unemployment insurance, New York State disability insurance payments, Social Security (FICA) withholding, or Federal or New York State Income Tax withholding. Again, this seems contrary to common sense and experience.

9. I have reviewed further evidence that leads me to conclude that defendants paid cash for many of their supplies, thereby understating their costs, and also hiding cash proceeds from their gross sales figures and understating sales to the tax authorities. First, there is absolutely no accounting for any fresh produce (lettuce, potatoes, tomatoes, cucumbers, jalapenos, mushrooms, avocados, etc.). These items account for a substantial part of Burgers' menu and incur significant costs. Nor is there any mention of frozen products

served, including onion rings, sweet potato, and shoestring fries. As mentioned above, I also reviewed a check written to his restaurant by a customer that was endorsed directly to one of his suppliers, rather than being deposited in the bank account for the restaurant. I am not aware how often this type of activity occurred, because the corporate defendant has not produced any bank statements. I have no way to estimate the number of checks he received and cashed or endorsed over to third parties without reporting the income, but in my professional opinion, it justifies the estimated 35% cash receipts amount that I have added to the reported credit card sales to arrive at a reasonable and justifiable estimate of total sales.

10. As mentioned above, I have compiled a table stating the credit card sales for each month of 2012 and 2103. I took the data as reported by defendants in the documents that they produced. To this I have added for each month an additional 35 percent for estimated cash sales to arrive at a reasonable estimate of gross sales for that month, which appears in the next column of Exhibit B. I have totaled the amount of sales to arrive at a yearly sales figure for 2012 and 2013.

11. I am calculating the reasonable royalty damages based upon my franchise agreement with the Burgers Bar chain. That includes an upfront franchise fee of $50,000 for defendant's restaurant that used my trademarks. It also includes a royalty of five (5) percent of gross sales on a monthly basis. In addition, the franchisee would be obligated (as I was) to buy virtually all of its supplies and raw ingredients, such as meat, salad dressings, sauces, soups, and prepared salads from the franchisor. The franchisor charged me its cost plus

7

seven (7) percent markup, and I would have charged the same to defendants. In my experience in the restaurant business, the cost of goods sold is conservatively about one-third of gross sales. The franchise fee on goods supplied to the franchisee of seven (7) percent is multiplied by the estimated cost of goods sold. I am estimating the cost of goods sold because, as stated above, it appears that defendants paid cash for much of their supplies and even endorsed checks from customers over to suppliers. In my view, these amounts are proper amounts to compensate the damages I sustained on account of defendants' infringement, although they should be tripled with reasonable attorney's fees and court costs added to reflect defendants' willful infringement, as held by the Court in the Order entered on September 16, 2014. I respectfully ask the Court to adopt these amounts and award them as the base calculation for damages owed to me on account of the infringement of defendants.

12. In summary, the calculations set forth on the attached schedule amount to the following:

Estimated Gross Sales for 2012=$213,295.48

Estimated Gross Sales for 2013=$225,336.95

Estimated Total Gross Sales for 2012 and 2013=$438,632.43

5% of Estimated Gross Sales=$21,931.62 (payable as a royalty)

Upfront Franchise Fee=$50,000.00

Estimated Cost of Goods Sold = .33(Estimated Gross Sales)=$144,748.70

7% Franchise Fee on Estimated Cost of Goods Sold=$10,132.41.

13. The Court's Order following the Report and Recommendations of Magistrate Judge Tomlinson found that defendants had admitted each and every allegation contained in the Complaint, including that the defendants are liable for treble damages, reasonable attorneys' fees and court costs. Those awards can be computed as follows:

3(Upfront Franchise Fee + 5% Royalty on Estimated Gross Sales + 7% Fee on Estimated Cost of Goods Sold) + Attorneys' Fees + Court Costs= Damages Award

3(50,000 + 21,931.62 +10,132.41) + Attorneys' Fees + Court Costs= Damages Award.

This amounts to 3(82,064.03)=$246,192.09 + Attorneys' Fees + Court Costs.

14. I represented myself *pro se* as the individual trademark owner for most of the proceeding, and recently retained counsel to assist me with motion practice, damages computation, and the upcoming settlement conference. My estimated counsel's fees including assisting with the preparation of this damages statement and the upcoming settlement conference before Judge Tomlinson amount to about $40,000.00. The court costs include the cost of filing the Complaint ($350.00) and the cost of duplicating discovery documents produced to defendants, which amount to about $160, representing 1600 copies at 10 cents a copy.

15. Thus the damages award including attorneys' fees and court costs amounts to $246,192.09+ 40,000 + 510, for a total award of $286,702.09, before prejudgment interest. I respectfully request that the Court enter an order awarding me this amount plus prejudgment interest since filing the Complaint.

I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

New York, New York

October 15, 2014

_____

Mitchell Krevat

## CERTIFICATE OF SERVICE

This is to certify that on October 15, 2014, I electronically filed the foregoing DECLARATION OF MITCHELL KREVAT with the Clerk of Court using the CM/ECF system, which will automatically send e-mail documentation for such filing to any attorneys of record and to the pro se defendant.

Robert D. Katz, Esq.

# EXHIBIT A

10:12 AM
06/02/14
Accrual Basis

**Burgers To Go, Inc**
**Profit & Loss Prev Year Comparison**
January through December 2013

| | Jan - Dec 13 | Jan - Dec 12 |
|---|---:|---:|
| **Ordinary Income/Expense** | | |
| **Income** | | |
| 4050 · Sales | | |
| 4055 · Sales Tax | -12,988.33 | -6,829.65 |
| 4050 · Sales - Other | 192,923.45 | 157,618.88 |
| Total 4050 · Sales | 179,935.12 | 150,989.23 |
| **Total Income** | 179,935.12 | 150,989.23 |
| **Cost of Goods Sold** | | |
| 5000 · Purchases | 0.00 | 32,028.12 |
| 5555 · Supplies | | |
| 5020 · Meat | 35,361.67 | 47,091.60 |
| 5030 · Beverages | 8,231.46 | 8,685.21 |
| 5035 · Flour | 0.00 | 222.80 |
| 5040 · Restaurant Supplies | 4,861.81 | 2,586.85 |
| 5050 · Bread & Pastry | 7,691.51 | 9,092.00 |
| Total 5555 · Supplies | 56,146.45 | 67,678.46 |
| **Total COGS** | 56,146.45 | 99,706.58 |
| **Gross Profit** | 123,788.67 | 51,282.65 |
| **Expense** | | |
| 8300 · Loss On disposition Goodwill | 11,000.00 | 0.00 |
| 8200 · Loss On sales of fixed assets | 12,286.21 | 0.00 |
| 6040 · Amortization Expense | 5,000.00 | 5,000.00 |
| 6110 · Automobile Expense | | |
| 6155 · Tolls & Parking | 157.20 | 0.00 |
| 6110 · Automobile Expense - Other | 0.00 | 2,166.00 |
| Total 6110 · Automobile Expense | 157.20 | 2,166.00 |
| 6120 · Bank Service Charges | 205.00 | 35.00 |
| 6125 · Credit Card Fees | 5,057.74 | 4,083.63 |
| 6140 · Contributions | 505.00 | 1,568.00 |
| 6150 · Depreciation Expense | 4,249.50 | 17,464.29 |
| 6160 · Dues and Subscriptions | 630.69 | 970.72 |
| 6177 · Outside Labor | 0.00 | 1,000.00 |
| 6180 · Insurance | | |
| 6175 · Health Insurance | 11,404.17 | 3,040.35 |
| 6185 · Liability Insurance | 2,145.20 | 0.00 |
| 6190 · Disability Insurance | -25.81 | 360.41 |
| 6420 · Work Comp | 734.00 | 2,183.00 |
| 6180 · Insurance - Other | 1,842.00 | 0.00 |
| Total 6180 · Insurance | 16,099.56 | 5,583.76 |
| 6195 · Alarm & Security | 130.35 | 498.97 |
| 6230 · Licenses and Permits | 275.00 | 1,669.00 |
| 6260 · Printing and Reproduction | 0.00 | 660.00 |
| 6270 · Professional Fees | | |
| 6280 · Legal Fees | 2,000.00 | 0.00 |
| 6650 · Accounting | 2,250.00 | 0.00 |
| Total 6270 · Professional Fees | 4,250.00 | 0.00 |
| 6290 · Rent | 60,679.55 | 33,000.00 |
| 6300 · Repairs | | |
| 6330 · Equipment Repairs | 0.00 | 550.00 |
| 6750 · Janitorial Exp | 960.28 | 1,038.19 |
| 6760 · Exterminator | 990.00 | 1,135.00 |
| 6300 · Repairs - Other | 2,114.18 | 0.00 |
| Total 6300 · Repairs | 4,064.46 | 2,723.19 |
| 6355 · Internet Cable | 61.37 | 697.75 |
| 6390 · Utilities | | |
| 6400 · Gas and Electric | 18,947.86 | 16,850.60 |
| Total 6390 · Utilities | 18,947.86 | 16,850.60 |

Page 1

10:12 AM
06/02/14
Accrual Basis

# Burgers To Go, Inc
## Profit & Loss Prev Year Comparison
### January through December 2013

| | Jan - Dec 13 | Jan - Dec 12 |
|---|---|---|
| 6550 · Office Supplies | 80.86 | 535.23 |
| 6560 · Salaries & Wages | | |
|   6000 · Officer's Comp | 325.51 | 1,739.69 |
|   6020 · Other Salaries | 9,937.36 | 8,138.91 |
| Total 6560 · Salaries & Wages | 10,262.87 | 9,878.60 |
| 6715 · Advertising | 250.00 | 2,114.00 |
| 6780 · Inspection | 4,010.71 | 8,303.91 |
| 6820 · Taxes | | |
|   6490 · Payroll Taxes | | |
|     6499 · Federal Payroll Taxes | | |
|       6491 · Social Security Tax-ER | 636.30 | 612.47 |
|       6492 · Medicare Tax-ER | 148.81 | 143.24 |
|       6493 · Federal Unemployment Tax | 246.82 | 0.00 |
|     Total 6499 · Federal Payroll Taxes | 1,031.93 | 755.71 |
|     8480 · State Payroll, Taxes | | |
|       6494 · SUI | 563.89 | 151.45 |
|     Total 8480 · State Payroll, Taxes | 563.89 | 151.45 |
|   Total 6490 · Payroll Taxes | 1,595.82 | 907.16 |
|   6860 · State | 400.00 | 400.00 |
| Total 6820 · Taxes | 1,995.82 | 1,307.16 |
| 6970 · Uniform | 0.00 | 1,240.00 |
| **Total Expense** | 160,199.75 | 117,349.81 |
| **Net Ordinary Income** | -36,411.08 | -66,067.16 |
| **Net Income** | -36,411.08 | -66,067.16 |

EXHIBIT B

SUMMARY OF DEFENDANTS' MONTHLY RECEIPTS

| | 2012 Credit Card Sales | Est. Cash Sales | Total Est. Sales | 2013 Credit Card Sales | Est. Cash Sales | Total Est. Sales |
|---|---|---|---|---|---|---|
| January | 12,277.02 | 4,296.96 | 16,573.98 | 15,418.61 | 5,396.51 | 20,815.12 |
| February | 11,492.36 | 4,022.33 | 15,514.69 | 11,859.48 | 4,150.82 | 16,010.30 |
| March | 14,094.29 | 4,933.00 | 19,027.29 | 17,431.24 | 6,100.93 | 23,532.17 |
| April | 13,952.04 | 4,883.21 | 18,835.25 | 15,113.22 | 5,289.63 | 20,402.85 |
| May | 12,655.61 | 4,429.46 | 17,085.07 | 13,960.08 | 4,886.03 | 18,846.11 |
| June | 16,206.02 | 5,672.11 | 21,878.13 | 14,672.16 | 5,135.26 | 19,807.42 |
| July | 10,709.89 | 3,748.46 | 14,458.35 | 13,592.56 | 4,757.40 | 18,349.96 |
| August | 17,739.59 | 6,208.86 | 23,948.45 | 16,404.19 | 5,741.47 | 22,145.66 |
| September | 11,031.45 | 3,861.01 | 14,892.46 | 10,426.46 | 3,649.26 | 14,075.72 |
| October | 11,316.94 | 3,960.93 | 15,277.87 | 14,296.79 | 5,003.88 | 19,300.67 |
| November | 12,223.20 | 4,278.12 | 16,501.32 | 14,125.52 | 4,943.93 | 19,069.45 |
| December | 14,298.24 | 5,004.38 | 19,302.62 | 9,615.95 | 3,365.58 | 12,981.53 |
| Total | 157,996.65 | 55,298.83 | 213,295.48 | 166,916.26 | 58,420.69 | 225,336.95 |

438,632.43

DAMAGES CALCULATION RECAP

| | | |
|---|---|---|
| One-time franchise fee | 50,000.00 | |
| Royalties on goods sold (5% of total sales) Back end | 21,931.62 | |
| Royalties on proprietary items front end Cost of Goods sold at 33% of total sales x 7% | 10,132.41 | |
| Total | 82,064.03 | 246,192.09 |
| Attorney's fees | | 40,000.00 |
| Filing fee | | 350.00 |
| Copying (1,600@.10) | | 160.00 |

**TOTAL DAMAGES**         286,702.09

chase/Chase DataStatements/CheckImage.aspx?PageSource=AA_AD&Src=AA&RequestCode=eVGHnT+4XOPk7jp/

# ASE

Search: How can we help you today

## Check Details

CFC CHECKING (...1718)

Check Number: 126      Post Date: 02/01/2014      Amount of Check: $53.16

### Front - Enlarge/Reduce Check Image

### Back - Enlarge/Reduce Check Image

For Deposit Only
Account #

